IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDITH ASIDAO, RONDA BRADY, FABIENNE FIFY, CHIARA DEL GIUDICE, ETHEL BARBEE, RACHELLE VARDON, DONALD MOARN, CANDACE DOBRINO, individually, and on behalf of All Others Similarly Situated,<br><br>          Plaintiffs,<br><br>   v.<br><br>RESURRECTION HEALTH CARE CORPORATION, SAINTS MARY AND ELIZABTH MEDICAL CENTER, OUR LADY OF THE RESURRECTION MEDICAL CENTER, WEST SUBURBAN MEDICAL CENTER, WESTLAKE COMMUNITY HOSPITAL, RESURRECTION MEDICAL CENTER, HOLY FAMILY MEDICAL CENTER, and SAINT FRANCIS HOSPITAL,<br><br>          Defendants. | Case No. 10 C 366<br><br>Judge St. Eve |

| | |
|---|---|
| TITA CAMILOTES, an individual, on behalf of herself and all others similarly situated,<br><br>          Plaintiffs,<br><br>   v.<br><br>RESURRECTION HEALTH CARE CORPORATION and SAINT JOSEPH HOSPITAL,<br><br>          Defendants. | Case No. 10 C 366<br><br>Judge St. Eve |

1

## ASIDAO PLAINTIFFS' MOTION
## FOR APPOINTMENT OF INTERIM LEAD COUNSEL

### I. INTRODUCTION

Plaintiffs Edith Asidao, Ronda Brady, Fabienne Fify, Chiara Del Giudice, Ethel Barbee, Rachelle Vardon, Donald Moarn, and Candace Dobrino (the "Asidao Named Plaintiffs") request that the Court appoint their counsel, Werman Law Office, P.C. and Cornfield and Feldman (collectively "WLO"), as Interim Lead Counsel in this consolidated action.[1] WLO is the most qualified candidate to perform the duties of Interim Lead Counsel in the consolidated matter, including the prompt filing of a Consolidated Complaint. WLO has substantial experience and success litigating FLSA and Illinois state wage and hour claims on behalf of classes of employees in the Northern District of Illinois. In addition, WLO's significant work in this matter has resulted in the *Asidao* action advancing significantly farther than the *Camilotes* action – which was filed three months after the *Asidao* action.

### II. STATEMENT OF RELEVANT FACTS AND PROCEDURAL OVERVIEW

#### A. The *Asidao* and *Camilotes* Actions Against Defendants

##### 1. The *Asidao* Action

The *Asidao* action was filed on October 26, 2009, alleging claims under the Fair Labor Standards Act (FLSA), Illinois Minimum Wage Law (IMWL) and Illinois Wage Payment and Collection Act (IWPCA) for unpaid overtime and straight wages against Saints Mary and Elizabeth Medical Center. Declaration of Douglas M. Werman ¶ 5 (hereafter "Werman Decl. ¶__"), attached hereto as Exhibit A. On March 25, 2010, the *Asidao* Plaintiffs filed a First Amended Complaint adding Chiara Del Giudice, Ethel Barbee, Rachelle Vardon, Donald Moarn, and Candace Dobrino as Named Plaintiffs and proposed Class Representatives and adding

---

[1] On May 28, 2010, the Court consolidated the *Asidao* and *Camilotes* cases, and terminated the *Asidao* case. See Case No. 09 6731, Dkt. #76.

2

Resurrection Health Care Corporation, Our Lady of the Resurrection Medical Center, West Suburban Medical Center, Westlake Community Hospital, Resurrection Medical Center, Holy Family Medical Center, and Saint Francis Hospital as Defendants.[2] Werman Decl. ¶6. As of May 27, 2010, sixty-eight (68) persons are party-plaintiffs in the *Asidao* action who are current and/or former employees at (6) of the seven (7) Defendant hospitals.[3] Werman Decl. ¶ 6.

The *Asidao* Plaintiffs allege in their First Amended Complaint (Dkt #39) that Defendants violated the FLSA, IMWL, and IWPCA by failing to pay them and other nursing employees for time they worked during unpaid meal periods and for time worked after the conclusion of their scheduled shifts. Werman Decl. ¶7. The *Asidao* Plaintiffs seek certification of their FLSA overtime claim as a collective action. *Id.* They also seek class certification under Fed. R. Civ. P. 23 of their IMWL and IWPCA claims. *Id.* With respect to their IMWL claim, the *Asidao* Plaintiffs seek to represent a class of persons who have been employed in nursing positions since October 2006 and who have not been paid overtime wages for all time they worked in excess of forty (40) hours per week. *Id.* With respect to their IWPCA claim, the *Asidao* Plaintiffs seek to represent a class of persons who have been employed in nursing positions since October 2004 and who have not been paid for all time they worked. *Id.*

---

[2] The *Asidao* Plaintiffs did not name Saint Joseph Hospital as a Defendant in the First Amended Complaint because the *Asidao* Plaintiffs had learned that Tita Camilotes, a nurse employed by Saint Joseph Hospital, had filed a complaint to recover her owed wages from Saint Joseph Hospital and Resurrection Health Care Corporation on behalf of herself and similarly-situated employees.

[3] Named Plaintiffs Edith Asidao, Ronda Brady and Fabienne Fify have worked at Saints Mary and Elizabeth Medical Center, Named Plaintiff Candace Dobrino and Donald Moarn have worked at Westlake Community Hospital, Named Plaintiff Chiara Del Giudice and Ethel Barbee have worked at West Suburban Medical Center, and Rachelle Vardon has worked at Our Lady of the Resurrection Medical Center. In addition, one opt-in plaintiff, Fernando Rosendo worked at Resurrection Medical Center and Holy Family Medical Center.

### 2. The *Camilotes* Action

The *Camilotes* action was filed approximately three months after the *Asidao* matter, on January 19, 2010.[4] The *Camilotes* case has a single Plaintiff, Tita Camilotes, who has worked at a single hospital, Saint Joseph Hospital. Camilotes First Amended Complaint, ¶ 9, Dkt #20. Ms. Camilotes also alleges claims under the FLSA, IMWL, IWPCA, and as an alternative to her IWPCA claim, a common law claim for Unjust Enrichment. Ms. Camilotes named Resurrection Health Care Corporation and Saint Joseph Hospital as Defendants in the lawsuit. To date, no one has opted into the *Camilotes* action.

Like the *Asidao* Plaintiffs, Ms. Camilotes also seeks certification of her FLSA overtime claim as a collective action. Camilotes First Amended Complaint ¶1, Dkt #20; Camilotes Consent Form, Dkt #27. In addition, Ms. Camilotes also brings her IMWL and IWPCA claims as class action claims. Ms. Camilotes seeks to represent in her IMWL and IWPCA claims a class of nursing employees who worked for Resurrection since January 19, 2007[5] and whose pay was subject to an automatic 30 minute meal period deduction even when they performed work during their unpaid meal period. Camilotes First Amended Complaint ¶ 3, Dkt #20.

### B. The Procedural Posture of the *Asidao* and *Camilotes* Actions

#### 1. Written Discovery Propounded by and Answered by the Asidao Plaintiffs

On February 10, 2010, the *Asidao* Plaintiffs served an initial set of discovery requests, including 12 interrogatories and 51 document requests, on Defendant Saints Mary and Elizabeth Medical Center. Werman Decl. ¶ 8. In addition to providing WLO with their written responses and objections, Defendant Saints Mary and Elizabeth Medical Center made 21 boxes of

---

[4] Although the *Camilotes* action was filed on January 19, 2010, it was not commenced as a collective action under the FLSA until May 20, 2010. See *Camilotes* docket, #27.

[5] The *Asidao* Plaintiffs seek certification of their IWPCA claims for a longer period of time: from *October, 2004* to the present, consistent with the applicable limitations period for such claims.

4

documents available for inspection. *Id.* WLO reviewed those documents at Defendants' Counsel's offices on April 21, 2010 and, through a third party vendor, had thousands of pages of documents copied. *Id.* On April 5, 2010, the *Asidao* Plaintiffs served all of the other named Defendants with an initial request for production of documents. *Id.* On April 8, 2010 the *Asidao* Plaintiffs served all Defendants with a Second Request for Production of Documents. *Id.*

Defendants served discovery requests, including 5 Interrogatories and 21 Document Requests, on Named Plaintiffs Asidao, Brady, Fify, Del Giudice, Barbee, Vardon, Moarn, and Dobrino. Werman Decl. ¶9. Plaintiffs have answered this discovery and produced over 3,100 pages of documents. *Id.*

WLO and Defendants' Counsel have also conducted several discovery conferences pursuant to Local Rule 37.2, on a number of topics, including the appropriateness of representative discovery, the scope of Plaintiffs' Rule 30(b)(6) Deposition Notice, and Defendants' responses to Plaintiffs' discovery. Werman Decl. ¶10. Plaintiffs expect to either have the subjects of all such discovery conferences resolved – or be at impasse – within the next several weeks. *Id.* Plaintiffs are then prepared to move to compel information and documents related to such subjects. *Id.*

### 2. Entry of a Protective Order

To facilitate the production of documents and other information, the *Asidao* Plaintiffs drafted and secured Defendants' agreement to a protective order. Werman Decl. ¶11. The parties' protective order was entered on the *Asidao* docket on May 4, 2010. Dkt. #60; Werman Decl. ¶11.

### 3. Third Party Discovery

On April 9, 2010, the *Asidao* Plaintiffs served a subpoena on a third party entity with documents and data relating to a number of subjects that are at-issue in this lawsuit, including

5

but not limited to a unit by unit analysis of nurse meal periods and break times. Werman Decl. ¶12.

WLO conferred with counsel for the third party entity regarding the requested information on several occasions in an effort to facilitate the production of the requested subpoena documents. Werman Decl. ¶13. Despite these efforts, the third party entity has objected to the production of any responsive documents. *Id.* Subject to the resolution of certain issues with Defendants, the *Asidao* Plaintiffs will file an enforcement action in the United States District Court for the District of Maryland. *Id.*

### 4. Deposition Schedule

Defendant Resurrection Health Care Corporation has agreed to produce for deposition, pursuant to Rule 30(b)(6), three (3) different witnesses on 24 different topics on June 8, 14, and 29, 2010. Werman Decl. ¶14. Defendants have also noticed the depositions of Plaintiffs. *Id.* Those depositions are noticed for May 26th, June 7th, June 8th, June 10th, June 14th, June 15th, June 16th, and June 30th. *Id.* The parties are currently working out mutually agreeable dates for Plaintiffs' depositions. *Id.*

### 5. Conditional Certification of Plaintiffs' Claims

On May 13, 2010 (Dkt. #65), Judge Andersen conditionally certified Plaintiffs' Fair Labor Standards Act claims under 29 U.S.C. 216(b) with respect to all nurses who have been employed by Defendant Saints Mary and Elizabeth Medical Center. Werman Decl. ¶15. The form of the Notice and Consent to be sent to putative opt-in class members were approved by the Court (Dkt. # 65) and were mailed to 1,042 similarly situated nurses on May 26, 2010. *Id.*

### 6. WLO's Development of the Facts for Conditional and Class Certification

In addition to the discovery conducted as detailed above, Plaintiffs have interviewed opt-in class members and conducted interviews with many other witnesses. Werman Decl. ¶16.

6

WLO has conducted interviews with dozens of other witnesses who have knowledge that registered nurses have been required to work through their unpaid meal periods at West Suburban Medical Center, Our Lady of the Resurrection Medical Center, St. Francis Hospital, St. Joseph Hospital, Resurrection Medical Center, Westlake Community Hospital, Holy Family Medical Center and Saints Mary and Elizabeth Medical Center. *Id.*

In addition, WLO has obtained declarations to use in support of a Motion for Conditional Certification of the *Asidao* Plaintiffs' FLSA claims under §216(b) of the FLSA, 29 U.S.C. §216(b). Werman Decl. ¶17. To date, WLO has collected declarations from eleven registered nurses, and is continuing to collect additional declarations to use in support of that motion. *Id.*

### C. WLO is Prepared to Move for Conditional Certification

As explained above, WLO has aggressively pursued discovery in the *Asidao* action, in the form of noticing depositions; obtaining extensive responses to written discovery, including responses as to putative class members' identities and contact information; and contacting and conducting informational interviews with putative class members. Werman Decl. ¶18. With the benefit of this costly and time-intensive discovery and investigation, over 68 persons have already elected to opt into the *Asidao* action – even without court authorized notice – and the Court has conditionally certified Plaintiffs' claims against Saints Mary and Elizabeth Medical Center. *Id.* In the light of these efforts, the *Asidao* Plaintiffs are poised to promptly move for conditional and class certification on the balance of their claims. *Id.*

### III. ARGUMENT

#### A. The Federal Rules of Civil Procedure Establish a Set of Guidelines for Selection of Interim Lead Counsel

The Court may, prior to class certification, appoint Interim Lead Counsel to coordinate and prosecute consolidated class claims and to avoid unnecessary costs, duplicative activity by counsel, delays, or other inefficiencies. *See In re Cardinal Health, Inc. ERISA Litig.*, 225 F.R.D.

7

552, 554 (D. Ohio 2005); Fed. R. Civ. P. 42(a)(3) (permitting orders which avoid unnecessary cost or delay in consolidated actions). Federal Rule of Civil Procedure 23(g)(3) provides that "[t]he court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Further, "[s]election of 'lead counsel' is a duty often left to the court if the parties cannot decide among themselves." *In re Cardinal Health, Inc. ERISA Litig.*, 225 F.R.D. at 554.[6]

If this Court wholly or partially consolidates the *Asidao* and *Camilotes* matters, when determining which counsel to appoint as Interim Lead Counsel, the Court must look to the standards for appointment of class counsel that are set forth in Federal Rule of Civil Procedure 23(g)(1)(A)(i-iv), which aim to determine counsel's ability to provide fair and adequate representation. *See In re Delphi ERISA Litig.*, 230 F.R.D. 496, 498-499 (E.D. Mich. 2005); *In re Cardinal Health, Inc. ERISA Litig.*, 225 F.R.D. at 554 (applying Federal Rule of Civil Procedure 23's standards for appointment of class counsel to decide appointment of Interim Lead Counsel in complex, consolidated class action).

Federal Rule of Civil Procedure 23(g)(1)(A)(i-iv) provides, in relevant part, that when appointing class counsel, the court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

In practice, Federal Rule of Civil Procedure 23 requires courts to "consider the following factors when appointing lead counsel: experience; prior success record; the number, size, and extent of involvement of represented litigants; the advanced stage of the proceedings in a particular suit; and the nature of the causes of action alleged." *See In re Cardinal Health, Inc. ERISA Litig.*, 225

---

[6] Counsel for the *Asidao* Plaintiffs and Ms. Camilotes met face to face but were unable to resolve who will act as lead counsel in this matter.

F.R.D. at 554. Given WLO's costly and time-intensive work to date in the *Asidao* action and its breadth of experience and knowledge of wage and hour class actions, WLO more than meets these requirements.

Interim Lead Counsel in a consolidated class action bears the responsibility of determining the scope and conduct of discovery, such as collecting wage and expense records from the defendant employer; assigning work to associate counsel; responding to, briefing, and arguing dispositive motions (e.g., motions for class certification); retaining experts; and conducting settlement negotiations. *See* Newberg & Conte, *Newberg on Class Actions*, §§ 9.34-9.36 (4th ed., 2002). In the event that the *Asidao* and *Camilotes* actions are consolidated – and given WLO's more advanced development of the *Asidao* action and its track record of success in prosecuting wage and hour class actions – this Court should deem WLO the most qualified among the Plaintiffs' counsel and appoint it as Interim Lead Counsel.

### B. WLO Is Best Capable of Performing the Duties of Interim Lead Counsel

#### 1. WLO Has Worked Extensively to Identify and Investigate Wage and Hour Claims Against Defendants

Since May 2009, WLO has extensively investigated potential wage and hour violations within the Resurrection Health Care System. Werman Decl. ¶3. Through its investigation WLO has interviewed opt-in Plaintiffs and other persons who have been employed at all of the hospitals within the Resurrection Health Care System. Werman Decl. ¶3. To date, the *Asidao* Action includes a total of 68 plaintiffs who have worked at 6 of the Resurrection hospitals. Werman Decl. ¶6. The *Camilotes* action involves one plaintiff who has worked at one Resurrection hospital.

In addition, the *Asidao* Plaintiffs benefit because they were the first to file their Complaint. According to the rule set forth in *American Pipe*, Plaintiffs' class action claims are tolled from the date they filed their Complaint. *American Pipe & Constr. Co. v. Utah*, 414 U.S.

9

538, 552-53 (1974). Moreover, the *Asidao* Plaintiffs seek to represent a class of nursing employees, who under the IWPCA, were not paid for all time they worked dating back five years from when the *Asidao* Complaint was filed. Ms. Camilotes' FLSA collective action claims arguably did not commence until she filed her consent form on May 20, 2010. 29 U.S.C. §256. Moreover, Ms. Camilotes only seeks to represent a class of nursing employees who were subject to IWPCA violations dating back three years from when she filed her Complaint, or from January, 2007 – whereas the Asidao Plaintiffs seek to represent a class of nursing employees who were subject to IWPCA violations dating back to October 2004. See footnote 5.

WLO has also made efforts to expeditiously move to conditionally certify the *Asidao* Plaintiffs' FLSA claims. Plaintiffs' FLSA claims against Saints Mary and Elizabeth Medical Center have already been conditionally certified, the Notice and Consent forms approved by the Court, and notice issued on May 26, 2010. WLO has also interviewed opt-in Plaintiffs, has and is obtaining declarations, has reviewed Defendants' document production, and has confirmed dates for a Rule 30(b)(6) deposition, all which will allow the *Asidao* Plaintiffs to swiftly move to conditionally certify the balance of the FLSA claims and move for class certification.

WLO, among the various Plaintiffs' counsel, has thus invested by far the most time and work into developing knowledge about the largely overlapping wage and hour class claims brought against the Defendants in the two related actions. *Waudby v. Verizon Wireless Services, LLC*, 248 F.R.D. 173, 176 (D.N.J. 2008) (appointing interim class counsel who engaged in "substantial participation" and "expanded [*sic*] a significant amount of money" developing claims and strategy). WLO is best able to direct the prosecution of the consolidated action, including drawing upon its existing knowledge to obtain certification in an efficient manner. For these reasons, WLO should be appointed Interim Class Counsel.

### 2. WLO Has Extensive Experience in Litigating Wage and Hour Actions

Wage and hour collective and class actions have been Werman Law Office's primary practice area for the last 10 years. Werman Decl. ¶21-26, 31-35. It is a known and recognized leader in wage and hour litigation in Illinois and in the United States. *Id.* Its lawyers have been instrumental in drafting and securing passage of Illinois wage and hour statutes, including the Illinois Day and Temporary Labor Services Act, the 2006 amendments to the Illinois Minimum Wage Law, and the 2010 amendments to the Illinois Wage Payment and Collection Act. Werman Decl. ¶24. Its lawyers are frequent speakers on wage and hour matters and are chapter editors for the leading treatise on Fair Labor Standards Act legislation, The Fair Labor Standards Act. Werman Decl. ¶25-26.

WLO has been appointed as Class Counsel through contested motions for class certification and settlement proceedings; obtained class certification; and won final approval of settlements valued at over 30 million dollars in wages for over 250,000 working people. Werman Decl. ¶34-35. Based upon WLO's extensive experience in litigating wage and hour class actions, this Court should appoint it Interim Lead Counsel.

### 3. WLO Has Comprehensive Knowledge of Illinois and Federal Wage and Hour Law and Class Action Procedure

As set forth in the Declaration of Douglas M. Werman, ¶21-35, and as discussed above, WLO has comprehensive knowledge of the FLSA, IMWL, and IWPCA. WLO has been lead counsel in over 400 class and collective actions and has frequently been appointed class counsel, including in cases litigated in this Court. Werman Decl. ¶22; *Shaukat v. Wireless 4 U, Inc.*, Case No. 06 C 4214 (August 7, 2008) (Dkt. # 181). In each instance, WLO's knowledge of the applicable class action procedural law has substantially contributed to its success in obtaining successful resolutions on behalf of employees. Werman Decl. ¶ 32. WLO's work on matters such as class certification motions, motions for final approval of settlements, and appellate briefs – in

addition to its experience with fundamentals such as drafting discovery and taking depositions – has sharpened and honed the collective comprehension of class action procedure, wage and hour law, and complex litigation strategy. Werman Decl. ¶34. Given this breadth of knowledge, WLO should be appointed as Interim Class Counsel.

### 4. WLO Can Commit the Resources Necessary to Best Represent the Putative Class

Werman Law Office employs 3 lawyers and 4 staff members, and it has two additional attorneys who are available to work on this case should additional staffing be required. Werman Decl. ¶36. In addition, two partners at the firm of Cornfield and Feldman, Melissa Auerbach and Stephen Yokich, have appeared on behalf of the plaintiffs and have taken an active role in the case. Ms. Auerbach and Mr. Yokich are experienced federal court practitioners who are knowledgeable about labor and employment law and who have experience in wage and hour issues and in class action practice. Declaration of Melissa Auerbach ¶ 5-12, attached hereto as Exhibit B, Declaration of Stephen Yokich ¶ 4-13, attached hereto as Exhibit C. Consequently, the lawyers representing the plaintiffs in this case are readily able to deploy multiple attorneys at any given time to attend hearings, take or defend depositions, or other tasks typical of complex class action litigation. WLO has demonstrated its ability to "keep up" and outpace the larger firms which typically defend class actions and to prevail on dispositive motions against defendants. Werman Decl. ¶ 34.

WLO has the financial resources available to advance all costs when it is Interim Lead or Class Counsel. Werman Decl., ¶ 37. WLO does not make any litigation decisions based on financial costs, but only on whether such decisions will materially advance the litigation. Werman Decl. ¶37. Moreover, unlike Plaintiff's counsel in the *Camilotes* matter, all counsel for the *Asidao* Plaintiffs are located in Chicago, Illinois. Werman Decl. ¶36, Yokich Decl. ¶ 5. Thus, there is no need for the *Asidao* Plaintiffs to use local counsel, or to travel out of state for

12

depositions, to appear in court, to meet and confer with opposing counsel, or to meet with clients and witnesses. In sum, it is more convenient for all parties – the class and opposing counsel – that WLO be appointed Interim Lead Counsel.

### 5. WLO Has Successfully Resolved Other Class and Collective Action Cases with Defendant's Counsel

WLO already demonstrated the ability to successfully resolve class and collective action litigation in cases with (and against) counsel for Defendants. In *Ortegon v. Staffing Network, Inc.*, Case No. No. 06 CH 12679 (Chancery, Illinois), WLO resolved the claims of over 3,300 day and temporary laborers in a case arising under the Illinois Wage Payment and Collection Act, the Illinois Minimum Wage Law and the Illinois Day and Temporary Labor Services Act. See also, *Cruz, et al. vs. U.S. Service Systems, et al.*, Case No. 07 C 3168 (collective action)(Tom Wilde and Vedder Price opposing counsel); *Braddish v. R A Bright Constr, et al*, Case No. 02 C 5619 (collective action)(Tom Wilde and Vedder Price opposing counsel).

## IV. CONCLUSION

In recognition of the firm's experience and expertise, courts have not hesitated to appoint WLO as Lead Counsel or Class Counsel in wage and hour actions. The *Asidao* Plaintiffs respectfully request that this Court appoint WLO as Interim Lead Counsel of the consolidated *Asidao* and *Camilotes* actions.

                                              Respectfully submitted,

Dated: May 28, 2010

                                              <u>s/Douglas M. Werman</u>
                                              One of Plaintiffs' Attorneys

| | |
|---|---|
| Douglas M. Werman –dwerman@flsalaw.com | Melissa J. Auerbach- mauerbach@cornfieldandfeldman.com |
| Maureen A. Bantz- mbantz@flsalaw.com | Stephen A. Yokich- syokich@cornfieldandfeldman.com |
| David E. Stevens-dstevens@flsalaw.com | Cornfield and Feldman |
| Werman Law Office, P.C. | 25 East Washington Street, Suite 1400 |
| 77 W. Washington, Suite 1402 | Chicago, IL 60602-1803 |
| Chicago, IL 60602 | (312) 236-7800 |
| (312) 419-1008 | |