# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 366 | **DATE** | 8/9/2010 |
| **CASE TITLE** | Camilotes vs. Resurrection Healthcare et al. | | |

**DOCKET ENTRY TEXT**

Plaintiffs' Motion to Compel Answers to Their Second Request for the Production of Documents [61] is granted. Defendants are to produce responsive documents and information to Plaintiffs' Second Request for the Production of Documents by 8/23/10.

■[ For further details see text below.]  Notices mailed by Judicial staff.

## STATEMENT

Before the Court is Plaintiffs' Motion to Compel Answers to Their Second Request for the Production of Documents. For the following reasons, the Court grants Plaintiffs' motion.

### BACKGROUND

Plaintiffs filed their complaint against Defendants Resurrection Health Care Corporation, *et al.* ("Defendants") pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* Plaintiffs, non-exempt staff nurses employed by Defendants, allege that Defendants failed to compensate them for all hours worked. Specifically, Plaintiffs allege that although Defendants regularly required Plaintiffs to work through all or part of their meal breaks, Defendants subjected Plaintiffs to automatic deductions for their scheduled meal breaks. In addition to their FLSA claims, Plaintiffs also seek to recover unpaid wages under the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.*, the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.*, and Illinois common law.

In their motion to compel, Plaintiffs seek information and documents from Defendants relating to Defendants' participation in the National Database of Nurse Quality Indications ("NDNQI"), a program operated by the American Nurses Association. The NDNQI is a comprehensive database consisting of information compiled from various hospitals. The database includes data compiled from a RN Satisfaction Survey, which includes questions regarding nurses' meal breaks, shifts and hours. Hospitals participate in the NDNQI in order to improve patient care and nursing practices. The NDNQI provides assurances of anonymity and confidentiality to the nurses who participate in the program.

| | Courtroom Deputy Initials: | KF |
|---|---|---|

## LEGAL STANDARD

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). In the context of motions to compel, the Seventh Circuit instructs that a "district court may grant or deny the motion in whole or in part, and similar to ruling on a request for a protective order under Rule 26(c), the district court may fashion a ruling appropriate for the circumstances of the case." *Gile v. United Air Lines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996) (citing Fed. R. Civ. P. 37(a)(4)(B), (C)). "Thus, a district court is not limited to either compelling or not compelling a discovery request; in making its ruling, a district court should independently determine the proper course of discovery based upon the arguments of the parties." *Id.* As with all discovery matters, district courts have broad discretion in determining motions to compel. *See id.*; *see also Reynolds v. Jamison*, 488 F.3d 756, 761 (7th Cir. 2007).

## ANALYSIS

Defendants contend that the self-evaluation privilege protects the reports and documents sought by Plaintiffs from discovery. "The self-critical analysis privilege is intended to encourage companies to engage in candid and often times critical internal investigations of their own possible wrong doings." *Ludwig v. Pilkington N. Am., Inc.*, 2004 WL 1898238, 2004 U.S. Dist. LEXIS 16049 (N.D. Ill. Aug. 13, 2004). "Despite the benefits of encouraging such investigations, courts have been somewhat hesitant to embrace the self-critical analysis privilege and have often qualified their uses of the privilege with phrases like 'assuming that the self-critical analysis privilege exists' or have noted that other courts have questioned the existence of such a privilege altogether." *Id.* at *4. Significantly, the Seventh Circuit has "never recognized" the "self-critical analysis privilege." *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003); *see also Gardner v. Johnson*, 2008 WL 3823713, 2008 U.S. Dist. LEXIS 61707 (N.D. Ill. Aug. 13, 2008) ("The self-critical analysis privilege has never been adopted as federal common law by the Seventh Circuit."). Indeed, when noting that the court has not recognized the privilege, the Seventh Circuit also highlighted that, "[m]any decisions caution against the creation of new privileges, even for what appear to be good reasons." *Burden-Meeks*, 319 F.3d at 901 (citing *University of Pennsylvania v. EEOC*, 493 U.S. 182, 189, 107 L. Ed. 2d 571, 110 S. Ct. 577 (1990)).[1]

Defendants cite two cases in their motion to support the contention that courts in this district have applied the self-critical analysis privilege and found documents protected by the privilege. Neither case, however, is instructive because in those rulings the courts merely assumed or presumed that the privilege applied. Moreover, as one court in this district has recognized, "[t]he majority of courts that ultimately concede or assume the privilege exist have narrowed the privilege's scope so that it does not apply to the documents at issue in the individual cases." *Ludwig*, 2004 WL 1898238, 2004 U.S. Dist. LEXIS 16049, at * 5 (N.D. Ill. Aug. 13, 2004). Considering that the Supreme Court instructs that privileges are "not lightly created nor expansively construed, for they are in derogation of the search for truth," *United States v. Nixon*, 418 U.S. 683, 709 (1974), the Court finds more persuasive the decisions of district courts that have declined to apply the self-critical analysis privilege. *See, e.g., EEOC v. City of Madison*, 2007 WL 5414902, 2007 U.S. Dist. LEXIS 70647 (W.D. Wis. Sept. 20, 2007) (declining to recognize the "self-critical analysis privilege" because "[t]he Seventh Circuit has not recognized such a privilege") (citing *Burden-Meeks*, 319 F.3d at 901); *Ludwig*, 2004 U.S. Dist. LEXIS 16049, at *8) (N.D. Ill. Aug. 13, 2004) (declining application of the self-critical analysis privilege in part based on the "tenuous" nature of the privilege); *Bell v. Woodward Governor Co.*, 2004 U.S. Dist. LEXIS 1052, 2004 WL 5645759 (N.D. Ill. Jan. 26, 2004) ("Because the Seventh Circuit has not yet taken a definitive position on the

---

[1] Even if the Court found that the self-evaluation did apply, it is not clear that the documents at issue meet the criteria for application of the privilege.

proper scope of the self-critical analysis privilege, this court will rely on its past decisions in finding that the privilege does not exist with regards to affirmative action materials.").

Moreover, it is clear that the documents and information sought by Plaintiffs are relevant to this dispute. In their complaint, Plaintiffs seek damages from Defendants for unpaid wages as a result of work performed during meal breaks. The NDNQI documents contain information regarding whether nurses received meal breaks, whether they interacted with patients during those meal breaks, and the duration of the meal breaks. The information contained in the NDNQI documents is thus relevant to Plaintiffs' claims. Moreover, while Defendants contend that the documents are inadmissible hearsay, the Federal Rules of Civil Procedure only limit discovery to "any matter, not privileged, that is relevant to the claim or defense of any party" and specifically note that the discovery "need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); *see also Automated Solutions Corp. v. Paragon Data Sys.*, 231 Fed. Appx. 495, 497 (7th Cir. 2007.)

Finally, while the Court recognizes that disclosure of the NDNQI data to Plaintiffs may raise confidentiality concerns, the protective order already in place in this matter should allay any concerns in this regard.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiffs' motion to compel. Defendants are to produce responsive documents and information to Plaintiffs' Second Request for the Production of Documents by August 23, 2010.