**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TITA CAMILOTES, *et al.*, individually, and on behalf of themselves and all others similarly situated, )<br>)<br>)<br>) | |
|                 Plaintiffs, )<br>) | No. 10-cv-366 |
|    v. )<br>) | |
| RESURRECTION HEALTH CARE CORPORATION, *et al.*, )<br>)<br>) | |
|                 Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

      Plaintiffs filed their Complaint against Defendants pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* Plaintiffs, non-exempt staff nurses employed by Defendant hospitals, allege that Defendants failed to compensate them for all hours worked. Specifically, Plaintiffs allege that although Defendants regularly required Plaintiffs to work through all or part of their meal breaks, Defendants subjected Plaintiffs to automatic deductions for their scheduled meal breaks. In addition to their FLSA claims, Plaintiffs also seek to recover unpaid wages under the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.*, the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq.*, and common law unjust enrichment. Before the Court is Defendants' motion for partial summary judgment, in which they seek dismissal of Plaintiffs' IWPCA and unjust enrichment claims. For the following reasons, the Court grants Defendants' motion.

BACKGROUND

I.     **Northern District of Illinois Local Rule 56.1**

Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). "The Rule is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Pursuant to the Local Rules, the Court will not consider any additional facts proposed in the nonmoving party's Local Rule 56.1(b)(3)(B) Response, but must rely on the nonmovant's Local Rule 56.1(b)(3)(C) Statement of Additional Facts. *See Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008).

The purpose of Local Rule 56.1 statements is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments,

and conjecture"). Moreover, the requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon*, 233 F.3d at 528. The Court may also disregard statements and responses that do not properly cite to the record. *See Cady*, 467 F.3d at 1060; *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809-10 (7th Cir. 2005). With these standards in mind, the Court turns to the relevant facts of this case.

## II. Relevant Facts

Defendants, St. Joseph Hospital, Saints Mary and Elizabeth Medical Center, Our Lady of the Resurrection Medical Center, Resurrection Medical Center, Holy Family Medical Center, and Saint Francis Hospital (collectively, "Defendants"), are hospitals located in the Chicago area that are all affiliated with Resurrection Health Care Corporation. (R. 182, Defs.' Local Rule 56.1 Stmt. Facts ("Defs.' Stmt. Facts") ¶ 3.) Named Plaintiffs Tita Camilotes, Ronda Brady, Fabienne Fify, Chiara Del Giudice, Ethel Barbee, Rachelle Vardon, Donald Moarn, and Candace Dobrino are or were employed as hourly-paid nurses at one of the Defendant hospitals. (*Id.* ¶ 4.)

Named Plaintiffs, along with most other hourly-paid nurses at the Defendant hospitals, use a personal security badge to swipe in at a time clock at the start of their shift and to swipe out at a time clock at the end of their shift. (*Id.* ¶ 5.) Defendant hospitals use a common system of timekeeping hardware and software, in which hourly-paid nurses record their work time. (R. 211, Pls.' Local Rule 56.1(b)(3)(C) Stmt. Add'tl Facts ("Pls.' Stmt. Add'tl Facts") ¶¶ 1-2; R. 224, Defs.' Resp. to Pls.' Stmt Add'tl Facts ¶¶ 1-2.) Resurrection Health Care Corporation compiles nurses' work time data at each Defendant hospital and processes payroll through the use of a payroll software application. (Pls.' Stmt. Add'tl Facts ¶ 3; R. 224, Defs.' Resp. to Pls.'

Stmt. Add'tl Facts ¶ 3.)

Defendants' human resources policy regarding "Pay Practices/Time Records" provides that "[h]ours worked means all hours actually worked, whether authorized or not . . . ." (Pls.' Stmt. Add'tl Facts ¶ 5.) It also states that "hours worked" includes "time worked by a non-exempt employee through a designated meal period . . . ." (Pls.' Stmt. Add'tl Facts ¶ 6; R. 224, Defs.' Resp. to Pls.' Stmt. Add'tl Facts ¶ 6.) Defendants' meal period policy provides that:

> Non-exempt employees who are scheduled for a shift of seven and one-half hours or longer will receive a thirty-minute unpaid meal period no later than five hours after they begin work. Departments will schedule meal periods to accommodate work needs.
>
> If a non-exempt employee works during his or her meal period, the 30 minutes will be paid. Manager approval is required for an employee to work through his/her scheduled meal period. Such approval must be noted on the employee's time document (see Pay Practices/Time Records Policy).

(Defs.' Rule 56.1 Stmt. Facts ¶ 6; R. 210, Pls.' Rule 56.1(b)(3)(B) Resp. to Defs' Stmt. Facts ("Pls.' Resp. Stmt. Facts") ¶ 6; Pls.' Addt'l Stmt. Facts ¶ 10.) It further states:

> If the employee takes a 1/2 hour scheduled meal period, 1/2 hour [must be/is[1]] deducted from the Total Working Hours for that day. If the employee works through the meal period, the employee must be paid for that time.

(Pls.' Addt'l Stmt. Facts ¶ 12; Defs' Resp. to Addt'l Stmt. Facts ¶ 12.) Defendants' Employee Handbook provides as follows:

> MEAL PERIODS
>
> Non-exempt employees who work a shift of at least seven and one-half (7-1/2) hours receive a thirty (30) minute unpaid meal period as assigned by the manager

---

[1] The January 2004 version of the policy stated that "1/2 hour must be deducted," and the March 2006 and January 2008 versions stated that "1/2 hour is deducted." (R. 179-1 at 146, 163; R. 179-5 at 37, 52.) The January 2008 version also provided that "[t]he employee should receive permission before working through the unpaid meal period." (R. 179-5 at 52.)

4

>no later than five (5) hours following commencement of the shift. The meal period is not counted as time worked. Your manager will assign you a meal period and advise you of the meal period policy for your particular shift.

(Pls.' Addt'l Stmt. Facts ¶ 11.)

Nurses who work at Defendant hospitals do not clock in and out for their meal period. (Pls.' Add'tl Stmt. Facts ¶ 18.) Rather, when a nurse clocks out after working seven and one-half hours, thirty minutes is automatically deducted from his or her compensation for that shift. (Defs' Stmt. Facts ¶ 7; Pls.' Resp. Stmt. Facts ¶ 7.) If a nurse did not get to take a meal period, he or she can punch a numeric code on the time clock, code "5" (sometimes referred to as the "no lunch punch"), to indicate that he or she did not get a meal period. (*Id*.) Defendants' human resource policies do not state how to enter a "no lunch punch" or that such process is available. (Pls.' Add'tl Stmt. Facts ¶ 15; Defs.' Stmt. Facts ¶ 15.) In some departments, there are alternative or additional mechanisms for a nurse to indicate that he or she did not take a meal period, such as writing it on a piece of paper, sending an email, or verbally informing the manager or charge nurse.[2] (*Id*.) When a nurse indicates that he or she did not take a meal period using one of these mechanisms, the nurse is paid for the missed meal period (i.e., thirty minutes are not deducted from the time recorded). (*Id.*) If a nurse is unable to swipe in or out, or did not accurately record his or her time worked, the nurse can inform the manager, or other supervisor or time card editor, who then accurately records the time worked in Defendants' timekeeping

---

[2] The parties dispute whether Defendants provided guidance to nurses as to when it was appropriate for them to cancel the automatic meal period deduction. Nevertheless, several Named Plaintiffs indicated during their depositions that they knew how to indicate that they had not received a meal period, whether by entering the "no lunch punch" or otherwise. (Camilotes Dep. 44:7-44:21; Fify Dep. 67:9-67:21; Del Giudice Dep. 54:23-55:5; Barbee Dep. 55:2-55:5; Vardon Dep. 52:9-52:21, 66:11-66:13; Moarn Dep. 79:23-80:12; Dobrino Dep. 85:13-17.)

system. (Defs.' Stmt. Facts ¶ 8.)

Denise Brown, Resurrection Health Care Corporation's Vice President of Human Resources, testified at her deposition that Defendants' policy "clearly states if you work over your shift, the hours you work you're paid for" and that the "manager doesn't decide whether or not somebody gets paid for those hours or not." (Pls.' Add'tl Stmt. Facts ¶ 8.) She further testified that there is a system to ensure that employees are paid for the time they work. (*Id*.; Defs.' Resp. to Add'tl Stmt. Facts ¶ 8.) Specifically, she stated that there is a "time-and-attendance system where you clock in, you clock out, and you get paid for that time. And if you worked through your lunch or your meal period, you reclaim that half hour back by how you punch out." (*Id*.) Ms. Nancy Ann Gunnell, Director of Human Resources at West Suburban Medical Center, testified that there is a basic understanding between West Surburban Medical Center and its employees that the employees should be paid for all time that they work, but she later testified that she "misspoke" and that "the nurses are paid for the hours recorded for the work." (*Id*. ¶ 9.) Mr. Michael O'Rourke testified that it is "our expectation that we will pay in accordance with [Resurrection Health Care] policy for all hours worked, and then if individuals worked for Resurrection Health Care for those periods of time, they'll be compensated for that period of time they worked." (R. 179-7, O'Rourke Dep. 145:1-11; Pls.' Add'tl Stmt. Facts ¶ 9; Defs' Resp. to Add'tl Stmt. Facts ¶ 9.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted). "[D]istrict courts presiding over summary judgment proceedings may not weigh conflicting evidence or make credibility determinations, both of which are the province of the jury." *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704-05 (7th Cir. 2011) (internal citations omitted).

## ANALYSIS

In this case, Named Plaintiffs assert that Defendants have violated the IWPCA by failing to compensate them for time they worked during their unpaid meal periods. (R. 122, First Am. Compl. ¶¶ 74-80.) Alternatively, they seek to recover damages for the same conduct under an unjust enrichment theory. (*Id.* ¶¶ 81-85.) Defendants move for summary judgment on both claims.

**I.     IWPCA Claim**

Defendants argue that they are entitled to summary judgment on Plaintiffs' IWPCA claim because there is no evidence of an employment contract or agreement between Defendants and Plaintiffs. The IWPCA "does not establish a substantive right to overtime pay." *DeMarco v.*

*Northwestern Mem'l Healthcare*, No. 10 C 397, 2011 WL 3510896, at \*6 (N.D. Ill. Aug. 10, 2011) (citing *Hall v. Sterling Park Dist.*, No. 08 C 50116 and 09 C 50146, 2011 WL 1748710, at \*6 (N.D. Ill. May 4, 2011) ("the IWPCA provides a cause of action where an employer did not honor a contract or agreement with an employee")). Instead, the IWPCA requires an employer to pay its employees all "compensation owed . . . pursuant to an employment contract or agreement between the 2 parties." 820 ILCS 115/2, 115/3. To prevail on a claim for compensation under the IWPCA, Plaintiffs must show that they have "a right to compensation pursuant to an employment contract or agreement." *Stark v. PPM Am., Inc.*, 354 F.3d 666, 672 (7th Cir. 2004); *see also* 820 ILCS 115/2. An "'agreement' [under the IWPCA] is broader than a contract and requires only a manifestation of mutual assent on the part of two or more persons.'" *Zabinsky v. Gelber Grp., Inc.*, 347 Ill. App. 3d 243, 249, 283 Ill. Dec. 61, 807 N.E.2d 666 (Ill. App. Ct. 2004).

In their First Amended Complaint, Plaintiffs allege that they "and members of the IWPCA Class have entered into *unwritten* agreements with Defendants pursuant to which Plaintiffs and members of the IWPCA Class are to receive certain wages, in compensation for their work for Defendants." (First Am. Compl. ¶ 79 (emphasis added).) They further allege that "Defendants' failure to pay wages for every hour worked, as required by Illinois law, represents a violation of their *oral agreements* with Plaintiffs and members of the IWPCA Class." (*Id.* ¶ 80 (emphasis added).) Plaintiffs do not allege that they or members of the IWPCA Class entered into written agreements with Defendants.

Defendants presently move for summary judgment, arguing that Plaintiffs failed to adduce evidence of an oral employment agreement or contract between Plaintiffs and Defendants

in which Defendants agreed to pay Plaintiffs "for every hour worked." Plaintiffs respond that such an agreement between the parties is documented in Defendants' written human resource policies. (Pls.' Resp. to Mot. for Partial Summ. Judg. at 3.) Plaintiffs further assert that several of Defendants' employees have "confirmed" in their deposition testimony that such an "agreement and understanding" exists. (*Id.*) In their reply, Defendants argue that Plaintiffs, recognizing the absence of any evidence of an oral agreement, have switched gears and now base their claims on a written agreement, which they did not allege in their Complaint. Doing so, Defendants argue, is procedurally improper and prejudicial to Defendants because they were not on notice of Plaintiffs' written contract theory and did not have the opportunity to explore it in discovery.

The Seventh Circuit has recognized that "a plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002); *see also Trade Fin. Partners*, *LLC v. AAR Corp.*, 573 F.3d 401, 412 (7th Cir. 2009) ("the district court did not err by concluding that [the plaintiff] waived this alternative basis for its breach [of contract] claims by raising it for the first time in its sur-reply during summary judgment proceedings") (citing *Grayson*, 308 F.3d at 817); *Crawford Supply Grp., Inc. v. Bank of Am., N.A.*, No. 09 C 2513, 2011 WL 3704262, at *4, n.4 (N.D. Ill. Aug. 23, 2011) ("The Seventh Circuit has explained that a plaintiff waives alternative bases for claims if they are not raised for the first time until briefing during summary judgment proceedings.") (citing *Trade Finance Partners*, 573 F.3d at 412); *BI3, Inc. v. Hamor*, No. 08-cv-2384, 2011 WL 1231156 (N.D. Ill. Mar. 30, 2011) (granting summary judgment in favor of defendant where the plaintiffs' "only response" to the motion "amounts to an improper attempt

9

to amend their complaint through arguments in opposition to the defendants' motion") (citing *Grayson*, 308 F.3d at 817). In their First Amended Complaint, they alleged that the parties' agreement was unwritten.[3] Plaintiffs did not seek leave to amend their Complaint to provide notice of their new theory at any time. Thus, in accordance with Seventh Circuit case law as cited above, Plaintiffs may not now, in response to Defendants' motion for summary judgment and after discovery has closed, pursue an IWPCA claim on the basis of a written agreement. *See id.*

Even considering Plaintiffs' argument on the merits, however, it nevertheless fails. Plaintiffs cannot rely on Defendants' written human resource policy to evidence an employment agreement under the IWPCA because that policy contains a disclaimer. Specifically, it states as follows:

> This Policy Manual should not be construed as creating a contract of employment between Resurrection Health Care and any of its employees . . . . Nothing stated in this Policy Manual is to be considered a contract of employment, a guarantee of employment or a guarantee of employment in a particular position or for a particular duration. Resurrection Health Care reserves the right to add, amend, delete or deviate from any benefit or policy stated herein at any time.

(R. 223, Decl.of Denise Brown ¶¶ 5-6 & Ex. 1.) Further, Defendants' employee handbook states that:

> Only the president and chief executive officers have the authority to enter into any employment agreement. Furthermore, any such employment agreement must be in writing and signed by the president and/or chief executive officer. In addition, [Resurrection Health Care] policies and procedures are continually reviewed, and are therefore subject to change. [Resurrection Health Care] reserves the right to add, amend, delete or deviate from any of the information

---

[3] Defendants represent that they produced the written human resource policies to Plaintiffs in May 2010, almost a full year before Plaintiffs filed their First Amended Complaint. (R. 223, Defs.' Reply at 3.)

stated herein at any time.

(*Id.* ¶¶ 7-8 & Ex. 2.[4])

Courts in this District, including this Court, have held that such a disclaimer negates a finding of mutual assent for purposes of an agreement under the IWPCA. *See Martino v. MCI Comm'cns Servs., Inc.*, No. 08-cv-4811, 2008 WL 4976213, at *8 (N.D. Ill. Nov. 20, 2008) (holding that the plaintiff's "IWPCA claim must fail because the Compensation Plan's disclaimers . . . are fatal to [the plaintiff's] claims that the Compensation Plan was an agreement or contract under the IWPCA"); *see also Skelton v. Am. Intercont'l Univ. Online*, 382 F. Supp. 2d 1068, 1075 (N.D. Ill. 2005) (granting summary judgment on plaintiffs' IWPCA claim where plaintiffs relied on an employee handbook that contained a disclaimer). Accordingly, Plaintiffs cannot rely on Defendants' human resource policy as evidence of an agreement.

Given that Plaintiffs cannot establish that Defendants' human resource policy evidenced an agreement between Plaintiffs and Defendants to pay Plaintiffs, Plaintiffs' assertion that Defendants' employees' "confirmed" that such an agreement exists in their deposition testimony is irrelevant. In any event, that testimony does not support Plaintiffs' assertion that Defendants agreed to pay Plaintiffs for "all time worked," even if that time was not recorded. Because Plaintiffs cannot establish an employment agreement or contract between Plaintiffs and Defendants, the Court grants Defendants' motion for summary judgment on Plaintiffs' IWPCA claim.

---

[4] Although Defendants did not cite to or include Ms. Brown's Declaration or the disclaimers in their Rule 56.1 Statement of Facts, the Court nevertheless considers them, in the interest of justice, in light of Plaintiffs' newly-asserted argument in its opposition to Defendants' motion for partial summary judgment.

**II.     Unjust Enrichment Claim**

The parties agree that Plaintiffs' unjust enrichment claim fails if Plaintiffs' IWPCA claim fails.[5] (Defs.' Mem. in Supp. of Mot. for Partial Summ. Judg. at 6; Pls.' Resp. to Mot. for Partial Summ. Judg. at 13-14.). *See also Cleary v. Phillip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) ("if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim") (citing *Ass'n Benefit Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007)). Because the Court grants Defendants' motion for summary judgment as to Plaintiffs' IWPCA claim, Plaintiffs' unjust enrichment claim cannot stand. *See Cleary*, 656 F.3d at 516; *Ass'n Benefit*, 493 F.3d at 855. The Court accordingly grants Defendants' motion as to Plaintiffs' unjust enrichment claim.

## CONCLUSION

For the reasons set forth above, the Court grants Defendants' motion for partial summary judgment.

DATED: July 16, 2012                                ENTERED

                                                                    _____
                                                                    AMY J. STUEVE
                                                                    United States District Court Judge

---

[5] Plaintiffs base their unjust enrichment claim only on their IWPCA claim and not on their FLSA claim. (R. 209, Pls.' Resp. to Mot. for Partial Summ. Judg.; First Am. Compl. ¶ 82 ("Plaintiffs bring this Count IV [for unjust enrichment] in the alternative to their claims under the IWPCA.").)